JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

LOOEASE FRIESDAT,

                Plaintiff,

  -v-

THE CITY OF NEW YORK, New York City Police
Department ("NYPD") Officer ("P.O.") JOSEPH SWICICKI,
(Shield No. 21546), P.O. JOHN DOE 1 through 10, and
SUPERVISORY OFFICER RICHARD ROE (the names
John Doe and Richard Roe being fictitious, as the true names
and shield numbers are not presently known), in their
ndividual capacities,

                Defendants.

-------------------------------------------------------------x

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Index No. 14-CV-_____



RECEIVED
ECD CASE
JAN 31 2014
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff LOOEASE FRIESDAT, through her attorney MARK C. TAYLOR of Rankin & Taylor, PLLC, as and for his complaint, does hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff LOOEASE FRIESDAT's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Ms. FRIESDAT's rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis used unlawful force against Ms. FRIESDAT. By reason of defendants' actions, including their unreasonable and unlawful seizure of her person, Ms. FRIESDAT was deprived of her constitutional rights.

1

3. Ms. FRIESDAT also seeks an award of compensatory damages, punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that Ms. FRIESDAT's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## PARTIES

7. Plaintiff LOOEASE FRIESDAT was at all times relevant to this action a resident of the State of New Jersey.

8. Defendant THE CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. New York City Police Department New York City Police Department ("NYPD") Officer ("P.O.") JOSEPH SWICICKI (Shield No. 21546) ("P.O. SWICICKI"), P.O. JOHN DOE 1 through 10, and SUPERVISORY OFFICER RICHARD ROE (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The individual defendants are being sued herein in their individual capacities.

11. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

12. The true names and shield numbers of defendants P.O. JOHN DOE 1 through 10 are not currently known to the Ms. FRIESDAT.[1] However, they are employees or agents of the NYPD. Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Ms. FRIESDAT intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants become known to Ms. FRIESDAT and (b) that the Law Department should immediately begin preparing their defense in this action.

## STATEMENT OF FACTS

13. During the afternoon of April 27, 2012, Ms. FRIESDAT was filming a demonstration affiliated with the Occupy Wall Street movement in lower Manhattan.

14. Ms. FRIESDAT is a professional documentary film producer and editor.

---

[1] By identifying said defendants as "John Doe" or "Richard Roe," plaintiff is making no representations as to the gender of said defendants.

3

15. At approximately 3:10 P.M. near 20 Pine Street in the County of New York, Ms. FRIESDAT witnessed an individual being detained by the NYPD. The individual, named William, was not known to Ms. FRIESDAT at that time.

16. Ms. FRIESDAT was videotaping the arrest from the side of the street when some of the individual defendants pushed her up against a white van and arrested. Ms. FRIESDAT's hands were placed in 'flexicuffs.'

17. By information and belief, individual defendants P.O. JOHN DOE 2 through 10 were standing outside 20 Pine Street at the scene of the arrest, observed the arrest and assisted in the arrest.

18. Defendant P.O. SWIKICKI was designated as Ms. FRIESDAT's arresting officer.

19. Ms. FRIESDAT was brought in a van to the Seventh Precinct at 19 ½ Pitt Street, where she was given a voucher for her camera equipment.

20. Ms. FRIESDAT informed the NYPD Officers present that she had a thyroid condition and would require medication if she was going to be detained until the following morning. Defendant P.O. SWIKICKI stated that Ms. FRIESDAT would be released that evening.

21. Defendant P.O. SWIKICKI removed the plastic cuffs from Ms. FRIESDAT's wrists with a box cutter. While sawing back and forth with the box cutter defendant P.O. SWIKICKI slipped and cut the back of Ms. FRIESDAT's hand. Ms. FRIESDAT requested some antibiotic ointment for the cut on her hand but she was told there was none in the first-aid kit. Ms. FRIESDAT did receive a Band-Aid for the wound but it later became the site of a minor infection.

22. Ms. FRIESDAT was photographed and fingerprinted at the 7th Precinct.

23. At approximately 8:00 P.M., Ms. FRIESDAT was brought to the central booking facility at 100 Centre Street in New York County.

24. Ms. FRIESDAT was again photographed at 100 Centre Street and was asked questions about her medical condition. Ms. FRIESDAT explained that she had a thyroid condition and would need medication if she was being held overnight.

25. Ms. FRIESDAT was sent to Bellevue hospital. Ms. FRIESDAT takes a daily thyroid medication as well as hydrocortisone for a thyroid condition. She was offered hydrocortisone at the hospital but declined to accept it.

26. Ms. FRIESDAT was taken to the 20th Precinct at 120 West 82nd Street and held overnight. She was then brought back to 100 Centre Street during the afternoon of April 28, 2012.

27. Ms. FRIESDAT was arraigned and released on her own recognizance at approximately 6:30 PM. Ms. FRIESDAT was charged with Obstruction of Governmental Administration (P.L. § 195.05) and Disorderly Conduct (P.L. § 240.20 (5)).

28. Ms. FRIESDAT spent approximately 27 hours in the defendants' custody as a result of her arrest.

29. Ms. FRIESDAT subsequently appeared in court June 19, 2012, July 30, 2012, October 4, 2012, and November 29, 2012.

30. Ms. FRIESDAT's case was dismissed in court on January 10, 2013 on a motion by the New York County District Attorney's office based on the fact that they could not prove the case beyond a reasonable doubt.

### FIRST CLAIM
### DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

31. Ms. FRIESDAT incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. Defendants, under color of state law, subjected Ms. FRIESDAT to the foregoing acts and omissions, thereby depriving Ms. FRIESDAT of her rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from false arrest, false imprisonment, and excessive use of force; (b) retaliatory arrest and retaliatory prosecution; and (c) freedom from malicious prosecution.

33. Defendants' deprivation of Ms. FRIESDAT's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983

34. Ms. FRIESDAT incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

35. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian.

36. Defendants' use of force against Ms. FRIESDAT was obviously excessive and unjustified under the circumstances yet the individual defendants at the scene outside 20 Pine Street within 15 feet of Ms. FRIESDAT's arrest failed to take any action or make any effort to intervene, halt or protect the Ms. FRIESDAT from being subjected to excessive force by other individual defendants.

37. The individual defendants' violations of Ms. FRIESDAT's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force against Ms. FRIESDAT resulted in the injuries and damages set forth above.

### THIRD CLAIM
### *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

38. Plaintiff Ms. FRIESDAT incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

39. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

40. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

41. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

42. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, arresting individuals in retaliation for filming government buildings or filming the conduct of government actors, particularly police officers.

43. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

   a. Bandele v. The City of New York, 07 CV 3339 (MGC)(S.D.N.Y.) The plaintiffs -- Lumumba Bandele, Djibril Toure and David Floyd -- say they were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757 C0A9619C8B63.

   b. Carneval v. The City of New York, 08 CV 9993 (DAB)(AJP)(S.D.N.Y.) A Manhattan photographer was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

   c. Justin Thomas v. The City of New York, 13 CV 6139 (SJ)(LB)(S.D.N.Y.) A Brooklyn based film student was arrested after shooting video of the 72nd Precinct station house on April 19, 2013. Officers subsequently removed the memory card from his camera prior to returning the equipment in an apparent attempt to hide the evidence of their improper conduct. Will Bredderman, *Lawyer: Police stole memory card to cover up illegal arrest*, The Brooklyn Paper (November 8, 2013), http://www.brooklynpaper.com/stories/36/46/all-filmmaker-nypd-lawsuit-2013-11-15-bk_36_46.html.

   d. Thirteen news organizations sued the NYPD for its treatment of journalists covering the Occupy Wall Street demonstrations, specifically, the arrests, detention and mistreatment of photographers and reporters covering the demonstrations. In addition, 10 press clubs, unions and other groups called for an investigation and formed a coalition to monitor police behavior going forward. Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times (Nov. 21, 2011), http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

e. Photographer Robert Stolarik, 43, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and with resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. *Times Photographer is Arrested on Assignment*, The New York Times (Aug. 5, 2012), http://www.nytimes.com/2012/08/06/nyregion/robert-stolarik-times-photographer-is-arrested-while-on-assignment-in-the-bronx.html?_r=1.

f. Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. A Brooklyn photographer was arrested and his pictures destroyed by NYPD officers after he filmed them stopping and questioning teenagers in Flatbush, Brooklyn. The National Press Photographers Association announced its interest in filing against the NYPD for the arrest. Sandy Eller, *Charedi Photographer Claims Handcuffed by NYPD After Videotaping Flatbush Police Stop*, Vosizneias, (Jan. 20, 2013), http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

h. Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez, 26, and Matthew Swaye, 35, said they were returning from a Bronx mall at about 10:30 p.m. Thursday when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming. Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

i. On June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses

for disorderly conduct. He has filed a complaint against officers alleging abuse and corruption. Meredith Hoffman, *Photographer Arrest Taking Pictures of Police Station House*, DNA Info (June 20, 2013), http://www.dnainfo.com/new-york/20130620/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick.

j. NYPD officers arrested a Bronx teenager after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

44. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, then Commissioner Raymond Kelly.

45. All of the foregoing acts by the individual defendants deprived plaintiff Ms. FRIESDAT of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraphs "32" above.

46. The CITY knew or should have known that the acts alleged herein would deprive the plaintiff of her rights, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

47. The CITY is directly liable and responsible for the acts of the individual defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

48. Despite knowledge of such unlawful <u>de facto</u> policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner William Bratton, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

49. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to conduct a retaliatory arrest and seizure.

50. Ms. FRIESDAT's injuries were a direct and proximate result of the CITY and the NYPD's wrongful <u>de facto</u> policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

## JURY DEMAND

51. Ms. FRIESDAT demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff FRIESDAT demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That she be awarded punitive damages against the individual defendants; and

c. That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:  New York, New York
        January 28, 2014

Respectfully submitted,

By: *[signature]*
Mark C. Taylor (MT 8551)
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507